UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN MEMORIAL PARK,
INC.,

                    Plaintiff,

                                              Case No. 12-cv-12023
vs.                                           HON. GERSHWIN A. DRAIN


UNITED STATES OF AMERICA,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING THE UNITED STATES'S MOTION FOR
SUMMARY JUDGMENT [#20], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT[#19] AND DISMISSING ACTION**

## I.    Introduction

Plaintiff, a for profit cemetery corporation, filed the instant lawsuit on May 4, 2012, against

Defendant, the United States of America, seeking a refund of federal income taxes paid for the

taxable years of 2004 through 2007.  The sole issue in this matter centers on how distributions a

cemetery corporation receives from a perpetual-care trust (PCT) should be characterized for tax

purposes.

Plaintiff maintains that the cemetery corporation is a beneficiary of the PCT, therefore it is

entitled to a dividends-received deduction under 26 U.S.C. § 243 for amounts received from the trust

as dividends.[1]  Conversely, the Government asserts that the PCT distributions made to Plaintiff  for

_____

[1]  In the complaint, Plaintiff requests damages in the amount of the claimed refunds,
however part of the Government's assessments for the taxable years 2004 through 2007 were for
amounts Plaintiff received as income from the trust that the trust received as tax exempt interest.
However, in its motion for summary judgment and its brief in opposition, Plaintiff fails to make

the care and maintenance of the cemetery grounds are compensation for services taxable to the corporation under 26 U.S.C. § 61.

Presently before the Court are the parties' cross Motions for Summary Judgment. The issues have been fully briefed and the Court finds that oral argument will not aid in the disposition of this matter. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), the parties' cross Motions for Summary Judgment will be resolved on the briefs. For the reasons that follow, the Court GRANTS the Government's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## II.    **Factual Background**

Plaintiff is a corporation organized under the Michigan Rural Cemetery Corporation Act, MICH. COMP. LAWS § 456.101 *et seq*., and operates an eighty five year old memorial garden cemetery. Plaintiff sells rights to be buried, entombed, or inured at Michigan Memorial Park, which consists of approximately one hundred and seventy (170) acres of dedicated land containing the remains of over seventy-five thousand (75,000) people who are either buried, entombed, or inured. Most of the cemetery is a garden style memorial with individual markers flush with the ground.

On November 13, 1945, Plaintiff established a PCT. The trust agreement has been amended several times to comply with Michigan law, including changes in 1969 to conform with certain statutory requirements, which for the first time required cemetery corporations to establish such perpetual-care trust funds. *See* Def.'s Mot. for Summ. J., Ex. 2. The 1969 trust document generally requires that 10% of the amounts received from the sale of burial sites be paid to the trust, with that percentage subject to fluctuation depending on whether minimum funding amounts have been

_____

any argument as to why these assessments were improperly included as taxable income.

achieved.  The trust provides that Plaintiff "shall periodically receive the income therefrom and shall apply and use such income to the maintenance, upkeep and beautification of the cemetery grounds belonging" to Plaintiff.

During the relevant time period, Michigan law provided that Plaintiff could use capital gains realized by the PCT to satisfy Plaintiff's statutory obligation to contribute fifteen percent (15%) of sale proceeds to the PCT.  Since 1993, Plaintiff solely used capital gains to fund the PCT in accordance with its statutory obligation.  Also during the relevant time period, Michigan law provided  that "'perpetual care' means all general work necessary to keep the cemetery property in a presentable condition at all times, including, but limited to, the cutting of grass at reasonable intervals; raking, cleaning, filling, seeding, and sodding of graves; replacement, pruning, or removal of shrubs and trees in order to assure access to interment rights; and the repair and maintenance of enclosures, buildings, drives, walks, and the various memorial gardens."  MICH. COMP. LAWS § 456.107a(7).[2]

During the years of 2004 through 2007, Plaintiff received dividends earned from the PCT's investments.  The amounts of these payments are as follows:

| Year | Amount Received |
|------|-----------------|
| 2004 | $ 224,423.00 |
| 2005 | $ 126,729.00 |
| 2006 | $ 235,000.00 |
| 2007 | $ 233,748.00 |

On its corporate income tax returns (Forms 1120 and 1120X) for years 2004 through 2007, Plaintiff

---

[2]  This section was repealed as of 2009.

recorded the money received as dividends that were entitled to the dividends received deduction set

forth in 26 U.S.C. § 243. These claimed deductions decreased the amount of taxes owed for 2004

through 2007 by $82,555.00; $30,162.00; $50,533.00; and $61,275.00.

The IRS, after audit and subsequent appeal, concluded that the payments from the PCT did

not qualify for the dividends-received deductions.  On January 20, 2009, the IRS sent a notice of

deficiency disallowing the dividend deductions.   The notice stated in relevant part:

> It is determined that amounts distributed from the cemetery trust are to be taxed as
> ordinary income under Code Section 61 of the Internal Revenue Code.   The
> corporation, Michigan Memorial Park, Inc., is not a beneficiary of the trust and thus
> the characterization provisions of section 652(b) and 662(b) do not apply to the
> distributions made to the corporation by the trust.  Accordingly, exclusions for tax-
> exempt income or dividend received deduction are not allowed.

*See* Def.'s Mot. Summ. J., Ex. 7. On June 22, 2009, the IRS made the following assessments:

$82,555.00 for 2004, $30,162.00 for 2005, $50,533.00 for 2006, and $61,725.00 for 2007.  Plaintiff

fully paid the additional assessments in 2009, as well as filed amended corporation income tax

returns claiming refunds of the additional assessments.  The Government sent correspondence to

Plaintiff indicating that the refund claims for the taxable years of 2004 through 2007 would not be

processed because the claim did not provide "new or additional information" and "the issue of

dividends was addressed by the Appeals Officer."  Plaintiff maintains that the denial of its claims

for refunds for taxable years 2004 through 2007 is contrary to the provisions of the Internal Revenue

Code.

**III.**      **Law & Analysis**

**A.**      **Standard of Review**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment

forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will

-5-

not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

> **B.** **Cross Motions for Summary Judgment**

The Government argues that the issues involved in this case are well-settled; cemetery corporations must treat distributions they receive from their corresponding PCT established for the benefit of cemetery customers as ordinary income, received in exchange for services rendered. Thus, Plaintiff is not entitled to the dividends-received deductions claimed for the years 2004 through 2007. Conversely, Plaintiff maintains that it is a beneficiary of the PCT and entitled to take the dividend-received deductions, therefore it is entitled to damages in the amount of the claimed refunds that the Government refuses to process.

The Internal Revenue Code subjects corporations to two levels of taxation, one at the corporate level and one at the shareholder level. *See Exacto Spring Corp. v. Comm'r*, 196 F.3d 833, 838 (7th Cir. 1999).  The Code attempts to ameliorate a possible third layer of taxation that may occur when one corporation subject to taxation pays a dividend to another corporation, also subject to taxation, by allowing, pursuant to 26 U.S.C. § 243, "as a deduction" 70% of the "amount received as dividends from a domestic corporation" that is subject to taxation under the Code.  Thus,  § 243 permits a 70% dividends-received deduction which removes a potential third layer of taxation from 70% of the dividend.

Section 652 of the Code provides, in pertinent part, that the income of a trust required to be distributed "shall have the same character in the hands of the beneficiary as in the hands of the trust."  26 U.S.C. § 652(b).  Section 1.643(c)-1 of Title 26 of the Code of Federal Regulations

provides that "[a]n heir, legatee, or devisee . . . is a beneficiary . . . ." 26 C.F.R. § 1.643(c)-1. Further, "[a]ny person with respect to an amount used to discharge or satisfy that person's legal obligation as that term is used in Section 1.662(a)-4" is treated as a beneficiary. 26 C.F.R. § 1.643(c)-1(a). Section 1.662(a)-4 states that "[a]ny amount which, pursuant to the terms of a . . . trust instrument, is used in full or partial discharge or satisfaction of a legal obligation of any person is included in the gross income of such person . . . as though directly distributed to him as a beneficiary . . . ." 26 C.F.R. § 1.662(a)-4.

Section 661 of the Code allows a trust a deduction for amounts properly paid or required to be distributed during a taxable year. Section 662(a) of the Code provides that a beneficiary receiving distributions must include such distributions as income. *See* 26 U.S.C. § 662(a). Section 662(b) provides that the amounts distributed "shall have the same character in the hands of the beneficiary as in the hands of the estate or trust." 26 U.S.C. § 662(b). The pass-through provisions only apply if the recipient is a "beneficiary" of the trust. The Government maintains that Plaintiff, a for-profit corporation, is not a beneficiary of the trust, thus amounts received by Plaintiff from its PCT constitute ordinary income to the corporation under Section 61 of the Code, and do not constitute amounts distributed from a trust under Section 662(b) of the Code.

The United States relies on *Monte Vista Burial Park, Inc. v. United States*, 340 F.2d 595 (6th Cir. 1965). *Monte Vista* is directly on point with the present matter. In *Monte Vista*, the taxpayer was a for profit cemetery organized under Tennessee law. *Id.* at 596. Pursuant to charter and Tennessee law, the cemetery was "required to set apart twenty-five percent (25%) of the gross sales" of its burial site sales "for a permanent fund to be used for the improvement, upkeep and beautification of the cemetery." *Id.* On its corporation income tax returns, the cemetery claimed

-7-

a dividends-received deduction as to the portion of the income it claimed "was attributable to dividends received by the trust on shares of stock in domestic corporations . . . ." *Id.* After the deductions were disallowed by the Commissioner, the cemetery filed suit. *Id.* The district court held, and the Sixth Circuit Court of Appeals agreed that the cemetery "was not the beneficiary of the trust and therefore was not entitled to the dividend deduction . . . ." *Id*. at 597. The Sixth Circuit held that:

> Monte Vista was the trustor and not the beneficiary of the trust fund. Tennessee National Bank and two individuals were the trustees. The cemetery lot owners were the beneficiaries of the trust fund. Monte Vista was required by its charter, the statutes of Tennessee and the trust instrument, to maintain the cemetery property. The payments which it received from the trustees were in the nature of compensation for its services.

*Id.*

In 1976, Congress enacted what is now 26 U.S.C. § 642(i), which grants a PCT a limited deduction for amounts that it is required to pay for the care and maintenance of burial sites. The Government contends that the legislative history of § 642(i) demonstrates that Congress intended no change to the decision reached in *Monte Vista*, which involved the tax treatment to the cemetery corporation, and not the corresponding trust. Senate Report 94-1317, addressing the taxation of PCTs, recognized the Government's position under existing law "that the deduction for income distributed to beneficiaries of trusts is not allowable to perpetual care funds because they do not have any ascertainable beneficiaries." Sen. Rep. 94-1317, 1976-2 C.B. 553, 1976 WL 191573. The Senate Finance Committee stated that "[b]ecause distributions by perpetual care funds for the purpose of the care and maintenance of grave sites are essentially equivalent to distributions on behalf of beneficiaries (grave site owners, heirs, and general public) the committee believes that a

limited deduction should be allowed with respect to such distributions." However, the change to the law only provides a deduction to the trust, and did not change any provisions regarding how a cemetery corporation reports taxable income. The Senate Report establishes that the new law was not intended to change the existing law concerning tax treatment to cemetery corporations:

> Since the taxable cemetery corporation is not the beneficiary of the perpetual care fund trust, the bill does not change the treatment of the receipt of such amounts by the taxable cemetery corporation. Consequently, such an amount is to continue to be taxable to the cemetery company as ordinary income and is not to be treated as trust distribution in the hands of the cemetery company. For example, even though the perpetual care fun makes a distribution out of dividend income, tax-exempt interest, or long term capital gains, the cemetery company is to include in income the total amount, without regard to the dividends received deduction, the exclusion of tax-exempt interest, and the deduction for half of long-term capital gains.

*Id.*

Further, the Internal Revenue Service (IRS) has opined on whether § 642(i) changed how a cemetery corporation should report on an income tax return amounts received from its corresponding trust that the trust received as tax-exempt interest. Revenue Ruling 87-97, 1987-2 C.B. 155, 1987 IRB LEXIS 106; 1987-39 I.R.B.14 holds that:

> Funds distributed by a perpetual care trust fund to a cemetery corporation for the care and maintenance of grave sites are compensation for services and are taxable to the corporation under section 61 of the Code. Therefore, since the trust distributions are not made to the cemetery corporation in its capacity as beneficiary, the provisions of sections 652( b) and 662 (b) do not apply, and the funds distributed do not have the same character in the hands of the cemetery corporation as in the hands of the cemetery perpetual care fund trust.

*Id.* Based on the Sixth Circuit Court of Appeals's decision in *Monte Vista*, *supra*, the legislative history of § 642(i), and the IRS's ruling, the Government maintains that the amounts received by Plaintiff from the PCT are amounts received as ordinary income and are not entitled to the dividends-received deduction of § 243. Therefore, Plaintiff is not entitled to a refund and summary

-9-

judgment should be entered in the Government's favor.  The Court agrees with the Government's position.

Plaintiff argues that *Monte Vista* is misplaced because it reached its conclusion with no analysis and relied on two decisions that are neither analogous nor relevant to the issues herein. *Monte Vista* relied on *Mount Vernon Gardens, Inc. v. Comm'r*, 298 F.2d 712 (6th Cir. 1962) and *Metairie Cemetery Assoc. v. United States*, 282 F.2d 255 (5th Cir. 1960).  Plaintiff further maintains that reliance on the legislative history of section 642(i) is misplaced because the regulation does not address taxation of cemeteries, rather it addresses distributions by a cemetery established fund.

As an initial matter, the trust arrangement at issue in *Monte Vista* is nearly identical to the trust arrangement implicated herein.  In the instant case, Plaintiff is required under Michigan law and the trust agreement to maintain the cemetery property, and is entitled to receive from the trust the amount of the trust's income, which is to be used specifically for that purpose.  *Monte Vista* concerned a Tennessee cemetery corporation that was required, pursuant to Tennessee statute and the trust agreement, to set apart twenty-five percent (25%) of the gross sale proceeds for a permanent fund to be used for the improvement of the cemetery grounds.  *Monte Vista*, 340 F.2d at 596.

The facts in *Mount Vernon Gardens* involved a for profit cemetery that was organized in 1952 by way of agreement wherein, as part of the agreement, the taxpayer agreed to execute a trust known as the Mount Vernon Gardens Development Trust Fund and to deposit in the trust either $15.00 per burial space, or the amount required by law, whichever was greater.  *Mount Vernon Gardens*, 298 F.2d at 713-14.  The trust fund was to be "expended solely for the physical development and improvement of the Tract, and that any amount not required for such purposes shall be distributed to and shall constitute a part of the principal of" another trust the Taxpayer agreed to set up known as the Mount Vernons Perpetual Care Trust Fund.  *Id.*

-10-

The taxpayer in *Mount Vernon Gardens* did not include as taxable income the portion of the sale proceeds deposited into the trust fund, and sought review of the Tax Court's decision that such amounts were properly included as taxable income and determined deficiencies in the taxpayer's income taxes for the calender years 1954 and 1955. *Id.* at 713. The *Mount Vernon Gardens* court held:

> It is clear from these cases that the entire amount received from the sale of a cemetery lot is to be treated as gross income in the absence of a binding obligation on the part of the cemetery requiring a portion of the purchase price to be used for the benefit of the lot owner.
>
>          *               *             *
>
> [T]he trust funds were available under the terms of the trust to promote future capital improvements in the taxpayer's property, was for the taxpayer's benefit, and accordingly was taxable income. . . .[a]ny increase in the value of the unsold lots, through permanent capital improvements, was a direct benefit to the cemetery company. We think that is the situation in the present case.

*Id.* at 716. Noting that the Commissioner did not tax as income the payments required to be made by the taxpayer to the trust for perpetual care of the lots, the Sixth Circuit opined that, unlike the cases relied on by the taxpayer, the facts before the court precluded a finding that there was an absence of an economic benefit to the taxpayer. *Id.* "The decisive feature in each case is the terms and provisions of the particular trust involved. The questions of control by, and inurement to the benefit of, the taxpayer, are of prime importance." *Id.*

Thus, while the issue in *Mount Vernons Gardens* was different than the exact issue herein, Plaintiff is incorrect in arguing that this case did not involve a perpetual-care trust. Rather, the trust at issue in *Mount Vernon Gardens*, like the PCT here, required the trust funds to be expended on upkeep and beautification of the cemetery grounds.

As to the other case relied on by the Sixth Circuit in *Monte Vista*, Plaintiff's proffered

distinction does not alter this Court's conclusion that Plaintiff is not a beneficiary of the PCT.  In *Metairie Cemetery*, the Fifth Circuit Court of Appeals held that a cemetery corporation's funds were held in trust for the benefit of "the burial lot owners and their heirs" and the distribution of income to the cemetery corporation from the trust constituted compensation to the corporation.  *Metairie Cemetery*, 282 F.2d at 229.  Plaintiff's argument that the funds were held in accounts that were earmarked for the benefit of the burial plot owners, as opposed to the cemetery as a whole, does not change the underlying principle that when a cemetery corporation receives money for upkeep of the land, this is "compensation of a cemetery corporation for the performance of a perpetual service," and thus "taxable income" under the Code.  *Id.* at 230-31.

Plaintiff also argues that the Senate Report only addresses the deduction to perpetual-care trusts now allowed under § 642(i) rather than the tax consequences to cemetery corporations. Section 642(i) permits a PCT to take a deduction for the payment made to the cemetery corporation, comparable to the deduction that it would have received if the payment was made to a beneficiary. However, the Report verified that Congress intended to preserve the taxation of that payment to the cemetery as compensation of services, stating that "such an amount is to continue to be taxable to the cemetery company as ordinary income . . . ." Sen. Rep. 94-1317, 1976-2 C.B. 553, 1976 WL 191573.

Lastly, any argument by Plaintiff that IRS Ruling 87-97 provides an insufficient factual basis to make a determination as to whether its principles are applicable here is unavailing.  The ruling states that "C, a taxable cemetery corporation, owns and operates a perpetual care cemetery in State X.  Under the laws of state X, a cemetery corporation must set aside and deposit in a maintenance trust fund a stated percentage of the payments received from the sale of grave sites.  For this purpose, C established T, a cemetery perpetual care trust fund that qualifies under section 642(i) of

the Code." *Id*. The sole difference between the facts present here and the facts in the Ruling is that Plaintiff has met its statutory obligation to fund the PCT based on the capital gains realized on the PCT's investments, rather than from sale proceeds. Plaintiff fails to explain how this factual distinction changes the principles set forth in the Ruling, specifically, that amounts distributed from the trust to the cemetery corporation are compensation for services.

Plaintiff's argument that it is a beneficiary of the PCT appears to rest on the theory that, under Michigan law, the PCT funded Plaintiff's obligation to pay fifteen percent (15%) of its sale proceeds to the PCT, thus Plaintiff is a beneficiary of the PCT since it funded an obligation that Plaintiff otherwise would have had to make out of its current sales. Plaintiff provides absolutely no case law to support its theory. Further, there is no obligation being funded by the PCT because Plaintiff has no obligation to contribute to the PCT if the corpus remains at the required statutory level. Further, Regulation § 1.643(c)-1 is limited to distributions that are required to be made by the trust to a beneficiary pursuant to the terms of the trust instrument. Here, the PCT was not required (or even authorized) to pay Plaintiff's statutory obligation, rather its obligation was satisfied from accumulated capital gains. Beneficiary status does not automatically arise if there "is an amount used to discharge or satisfy that person's legal obligation" but only if the amount is distributed pursuant "to the terms of a will or trust instrument." 26 C.F.R. § 1.662(a)-4. This argument has no merit. Thus, the Court finds that Plaintiff is not a beneficiary of the PCT. Therefore, the amounts received by Plaintiff from its PCT constitute ordinary income and do not constitute amounts distributed from a trust under Section 662(b) of the Code. Plaintiff is not entitled to its claimed refunds for taxable years 2004 through 2007.

## IV.   CONCLUSION

For the reasons articulated above, the United States's Motion for Summary Judgment [#20]

is GRANTED.

Plaintiff's Motion for Summary Judgment [#19] is DENIED.

This cause of action is DISMISSED.

SO ORDERED.


Dated: January 8, 2013                              /s/Gershwin A Drain
                                                    GERSHWIN A. DRAIN
                                                    United States District Judge




CERTIFICATE OF SERVICE


Copies of this Order were served upon attorneys of record on

January 8, 2013, by electronic and/or ordinary mail.


/s/ Tanya Bankston

Deputy Clerk